**SO ORDERED.**

**SIGNED this 16 day of June, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **Joyce Marie Tomlinson** | ) | **No. 04-12542** |
| | ) | **Chapter 7** |
| Debtor | ) | |
| | ) | |
| **Douglas R. Johnson, Trustee** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Adv. No. 05-1226** |
| | ) | |
| **David Larry Tomlinson** | ) | |
| | ) | |
| Defendant | ) | |

**M E M O R A N D U M**

This is an adversary proceeding by a chapter 7 trustee against the debtor's former husband for the turnover of a Cessna aircraft. The proceeding is before the court on cross motions for sum-

mary judgment. For the reasons that follow, the court is of the opinion that both motions should be denied.

## I.

On May 30, 1995, the defendant purchased a Cessna C-172 aircraft from Larmont Aviation International. The defendant asserts that it was his intent that he would own the aircraft, and the bill of sale listed the defendant as the sole purchaser. A letter from the seller of the aircraft confirms that the defendant was the purchaser, and the commitment for the financing of the purchase was issued to the defendant. However, the debtor, who was then the defendant's wife, was named as a co-owner when the transfer was recorded with the Federal Aviation Administration. She also signed the promissory note (and, apparently, a security agreement) to NationsBank, the bank that financed the purchase. Both the defendant and the debtor, however, have given affidavits stating that the debtor participated in the transaction solely as an accommodation, that the debtor never exercised any right of ownership or control of the aircraft, and that she never made any payments on the debt for the purchase price. Both affidavits state that it was always intended by the debtor and the defendant that the aircraft would be considered the defendant's property.

On September 28, 1995, the defendant transferred a one-half interest in the aircraft to David Goins. The defendant's and debtor's affidavits indicate that, while only the defendant signed the bill of sale as seller, the debtor consented to the transaction. The transfer was never recorded with the FAA and, according to the defendant's affidavit, he and Mr. Goins never did that "since there was a lien held by Nations Bank to secur[e] the original purchase price."

On October 2, 2003, the defendant and the debtor entered into a marital dissolution agreement, which provided:

> [E]ach party is hereby awarded all items of personal property, household goods, furnishings, and personal items of every type and nature presently in their respective possessions, and the other party is hereby divested of any right, title or interest therein.

On February 3, 2004, that agreement was incorporated into a final decree of divorce. The affidavits of both the defendant and the debtor state that, on the date of the marital dissolution and the date of divorce, the defendant was in possession and control of the aircraft. This assertion is supported by a hangar lease between the defendant and Collegedale Municipal Airport. The debtor's affidavit goes on to state that she understood the divorce to have divested her of any interest in the aircraft.

On April 21, 2004, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The plaintiff was appointed trustee and filed the instant complaint seeking a determination of the parties' respective interests in the aircraft, its turnover, and authorization to sell the debtor's alleged interest in the aircraft.[1]

## II.

### A.

There are two issues addressed by the parties in this proceeding. The first issue is whether the debtor ever owned a one-half interest in the aircraft. If she did not, the trustee loses. If she did, the court must consider the second issue, namely, whether the divorce decree and marital dissolution agreement transferred the debtor's interest in the aircraft to the defendant such that the trustee cannot avoid the transfer under 11 U.S.C. § 544.

Addressing the first issue, the trustee appears to argue that, because the document recorded with the FAA names the debtor as a co-owner of the aircraft, the debtor's one-half interest is thereby

---

[1] During oral argument on the motions for summary judgment, counsel advised that the aircraft had been sold and that the parties' dispute now concerns the disposition of the proceeds.

3

conclusively established. That is not the case, however. While the recordation indicates that the defendant transferred an interest in the aircraft to the debtor after he purchased it, the Federal Aviation Act specifically provides that "[t]he validity of a conveyance . . . that may be recorded under section 44107 of this title is subject to the laws of the State . . . at which the conveyance . . . is delivered." 49 U.S.C. § 44108(c); *see also id.* § 44103(c)(2) ("A certificate of registration issued under this section is . . . not evidence of ownership of an aircraft in a proceeding in which ownership is or may be in issue."). Thus, Congress "left to state law the legal effect of a recorded instrument." *Sanders v. M.D. Aircraft Sales, Inc.*, 575 F.2d 1086, 1088 (3d Cir. 1978) (citation omitted); *accord*, *e.g.*, *Aircraft Trading & Servs., Inc. v. Braniff, Inc.*, 819 F.2d 1227, 1231 (2d Cir. 1987). This means that the court must look to Tennessee law to determine the defendant's and debtor's ownership interests in the aircraft.

Although the parties have not cited a Tennessee case that addresses the factors a court should consider in determining ownership of an aircraft, the court believes Tennessee courts would use the same factors that are used by Tennessee courts to determine ownership of automobiles and other personal property. It is the law in this state "that the intention of the parties, not the certificate of title, determines the ownership of an automobile." *Smith v. Smith*, 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983). Thus, it has been held that intent governs whether the owner of a motor vehicle shown on the certificate of title transferred his interest to another. *Mercado v. Travelers Ins. Co.*, 443 S.W.2d 819, 822-23 (Tenn. Ct. App. 1969); *Stevens v. State Farm Mut. Auto. Ins. Co.*, 443 S.W.2d 512, 513-14 (Tenn. Ct. App. 1969); *Hayes v. Hartford Accident & Indem. Co.*, 417 S.W.2d 804, 807-08 (Tenn. Ct. App. 1967). The court must consider the totality of the circumstances to determine the parties' intent. As one panel of the Tennessee Court of Appeals has explained:

4

> Ownership is a purely legal concept. It connotes a "bundle of rights" or legally protected interests with regard to specific property. Included in this bundle of rights are (1) the right of possession, enjoyment, and use, (2) an unrestricted right of disposition, and (3) the right of testamentary disposition. Proof of ownership generally involves evidence with regard to possession and exercise of one or more of the prerogatives in this bundle of rights. Thus, ownership is a question for the trier-of-fact to determine from the evidence.
>
> To determine ownership of a vehicle, a trier-of-fact may consider and weigh evidence relating to (1) the circumstances surrounding the vehicle's purchase, (2) the registration of the vehicle, (3) all aspects of insuring the vehicle, (4) all parties' financial stake in the vehicle, (5) the actual possession of the vehicle, (6) the responsibility for bearing the expense of operating, maintaining, and licensing the vehicle, and (7) the ultimate right to control the vehicle, including the right to make major decisions concerning the vehicle such as its use and restrictions on its use or the sale or other disposition of the vehicle.

*Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 WL 1077952, at *11 (Tenn. Ct. App. Sept. 14, 2001) (citations omitted); *see Hayes*, 417 S.W.2d at 808 (considering payment of purchase price and possession and control). The court sees no reason that these principles should not be applied in the present context.[2] *See* T.C.A. § 47-2-401(1) (establishing general rule that "title to goods passes from the seller to the buyer in any manner and on any conditions explicitly agreed on by the parties"); 1 Tenn. Jur. *Gifts* § 6 (2004) (gift requires intent to make gift); 1 Tenn. Jur. *Assignments* § 13 (2004) ("an intent to transfer must be manifest" to effect an assignment).

Here, in determining the extent of the interest (if any) that the debtor acquired, the facts favoring the plaintiff are the document recorded with the FAA and the debtor's signature on the

---

[2] The plaintiff argues that these cases are distinguishable because they are based on a provision of the certificate of title statutes. However, there is no statute in Tennessee providing that the certificate of title is not conclusive as to ownership. Rather, the courts hold that the intent of the parties controls *despite* statutory requirements that purchasers of vehicles register their ownership with the county clerk or registrar of motor vehicles. The same rule should apply with respect to goods subject to the statutory requirement that purchasers of aircraft record their ownership with the FAA.

promissory note (and possibly the security agreement) given to NationsBank for its advance of the purchase price. On the other hand, both the debtor and the defendant have stated under oath that they never intended for the debtor to have any interest in the aircraft and that she never exercised any control of the aircraft or made any payments thereon.[3] The court believes that the recordation and loan documents raise a sufficient question such that the court should have an opportunity to evaluate the witnesses' credibility at trial. Determining this issue will be a matter of weighing the conflicting evidence and making findings of fact based upon a preponderance of evidence standard. A court should refrain from assessing the probative value of the material presented in connection with a motion for summary judgment, especially where such assessment will turn in large part on the witnesses' credibility. *See generally* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §§ 2726-2728 ( 3d ed. 1998).

**B.**

Even though there are genuine issues of material fact regarding the debtor's initial ownership interest in the aircraft, the defendant relies on the divorce decree as a second line of defense. The defendant argues that, even if the court were to find that the debtor originally held a one-half interest in the aircraft, that interest was conveyed to the defendant by the divorce decree and marital dissolution agreement, and the plaintiff cannot set aside that conveyance as a hypothetical judicial lien creditor or execution creditor under 11 U.S.C. § 544.

The facts appear undisputed that whatever interest the debtor had in the aircraft at the time of her divorce, that interest was transferred to the defendant by reason of the divorce decree and thus

---

[3] In addition, the defendant has stated that the debtor participated in the negotiations with David Goins, but that she did not sign the bill of sale as seller because she did not believe she owned an interest in the aircraft.

was not part of the debtor's bankruptcy estate at the time the debtor's bankruptcy petition was filed. *See McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192 (6th Cir. 1996). Arguing that the transfer was never recorded in accordance with the Federal Aviation Act, the trustee seeks to set aside that transfer and recover the property for the benefit of the estate under the provisions of 11 U.S.C. §§ 544 and 550. The defendant argues that he is entitled to summary judgment as a matter of law, because the trustee cannot avoid the transfer even though the transfer was not recorded.

Section 544 of the Bankruptcy Code provides, in pertinent part:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> > (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> >
> > (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists.[4]

Using his status as a judicial lien creditor or execution creditor, the plaintiff takes the position that the conveyance effected by the divorce decree was invalid against him because of the provisions of the Federal Aviation Act set forth in 49 U.S.C. § 44108(a). That statute reads:

> Until a conveyance, lease, or instrument executed for security purposes that may be recorded under section 44107(a)(1) or (2) of this title is filed for recording, the conveyance, lease, or instrument is valid only against—

---

[4] Section 544(a)(3) is inapplicable, because it applies only to transfers of real property. The parties have not addressed the applicability of Section 544(b).

> (1) the person making the conveyance, lease, or instrument;
> (2) that person's heirs and devisees; and
> (3) a person having actual notice of the conveyance, lease, or instrument.

In interpreting this provision's predecessor, the Supreme Court has held that the statute invalidates unrecorded title transfers, not just unrecorded title instruments, so that a claimant cannot "prevail against an innocent third party by establishing his title without relying on an instrument." *Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 409 (1983). Rather, the statute –

> means that every aircraft transfer must be evidenced by an instrument, and every such instrument must be recorded, before the rights of innocent third parties can be affected. Furthermore, because of these federal requirements, state laws permitting undocumented or unrecorded transfers are preempted, for there is a direct conflict between [the Federal Aviation Act provision] and such state laws, and the federal law must prevail.

*Id.* at 409-10. "Although state law determines priorities, all interests must be federally recorded before they can obtain whatever priority to which they are entitled under state law." *Id.* at 413.

The plaintiff, having the status of a creditor obtaining a judicial lien or executing on a judgment on the petition date, is not "the person making the conveyance," that person's heir or devisee, or – because a trustee lacks knowledge of a transfer as a matter of law – a "person having actual notice of the conveyance." 49 U.S.C. § 44108(a)(1)-(3). While it may be true as a general rule under state law that a judicial lien creditor can obtain no greater rights than the judgment debtor, the Federal Aviation Act preempts state law and requires that "the instrument must be recorded before it obtains whatever validity to which it is entitled under the state law applicable." *Philko Aviation*, 462 U.S. at 413 n.7. The statute does not include judgment lien creditors in its list of exceptions, so this court joins those courts holding that transfers of aircraft not recorded in accordance with the FAA are invalid as to judgment creditors. *E.g.*, *Lewistown Propane Co. v. Ford*, 42 P.3d 229 (Mont.

Main Document     Page 9 of 10

2002); *Wilson v. Barnes*, 221 S.W.2d 731 (Mo. 1949); *Bank of Honolulu v. Davids*, 709 P.2d 613, 616-19 (Hawaii Ct. App. 1985).[5] The court declines to follow the cases holding otherwise on the basis of state law or on the ground that the statute was not intended to protect creditors that do not rely on the federal recordation in extending credit to the owner of record. *E.g.*, *Bergquist v. Anderson-Greenwood Aviation Corp. (In re Bellanca Aircraft Corp.)*, 850 F.2d 1275, 1277-78 (8th Cir. 1988); *Compass Ins. Co. v. Moore*, 806 F.2d 796 (8th Cir. 1986).

Accordingly, the court holds that any unrecorded conveyance of the aircraft to the defendant made by the divorce decree is not enforceable against the plaintiff and may be avoided under § 544.[6] For that reason, the debtor's interest in the aircraft prior to the execution of the marital dissolution agreement and the entry of the final decree of divorce incorporating it, if any, may be brought into the bankruptcy estate under § 541(a)(3) or (4) of the Bankruptcy Code.

### III.

While the plaintiff may avoid the unperfected transfer effected by the divorce decree and marital dissolution agreement, it remains to be determined what interest (if any) in the aircraft the debtor received when it was purchased in May 1995. Accordingly, the court will enter a separate

---

[5] Other courts have reached the same conclusion under an analogous provision of the Ship Mortgage Act, 46 U.S.C. § 31321. *E.g.*, *Mullane v. Chambers*, 333 F.3d 322, 329-33 (1st Cir. 2003); *Graeber v. Hickel Inv. Co.*, 803 P.2d 871 (Alaska 1990).

[6] The complaint initiating this proceeding also sought to avoid the transfer as a preference. However, the plaintiff's response to the defendant's statement of undisputed material facts admits that no debts were owing between the debtor and the defendant at the time of the divorce. Accordingly, even though the brief in support of the plaintiff's motion for summary judgment persists in asserting the preference claim (without mentioning the "antecedent debt" issue), there is no genuine issue that the transfer was not made "for or on account of an antecedent debt owed by the debtor before such transfer was made," so the transfer is not avoidable as a preference. 11 U.S.C. § 547(b)-(2).

order denying both parties' cross-motions for summary judgment. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c).

###