**SO ORDERED.**

**SIGNED this 07 day of August, 2006.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Joyce Marie Tomlinson** | ) | **No. 04-12542** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| | ) | |
| **Douglas R. Johnson, Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Adv. No. 05-1226** |
| | ) | |
| **David Larry Tomlinson** | ) | |
| | ) | |
| **Defendant** | ) | |

**M E M O R A N D U M**

   This is an adversary proceeding in which the chapter 7 trustee is seeking to recover one-

half the value of a Cessna aircraft from the defendant, the debtor's former husband, pursuant to

1

the provisions of 11 U.S.C. §§ 544 and 550. The trustee contends that the Cessna aircraft was, at one time, jointly owned by the defendant and the debtor and that a subsequent transfer of the aircraft to the defendant pursuant to a divorce decree was invalid as to the trustee in his role as a hypothetical judgment creditor. The defendant contends that the debtor never owned the Cessna aircraft as both the defendant and debtor always considered the aircraft as belonging exclusively to the defendant, and the defendant argues that, if the debtor had any ownership interest in the aircraft, it was transferred to the defendant by the divorce decree. Both parties previously filed cross motions for summary judgment in this proceeding, but those motions were denied.[1] Having now considered the evidence introduced at trial and the arguments of counsel, the court makes its findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The defendant, David Tomlinson, was previously married to the debtor, Joyce Tomlinson.[2] In the spring of 1995 the defendant and Thomas Pope, a friend of the defendant's, decided to purchase a Cessna aircraft. Because, however, Mr. Pope's wife did not want her husband to buy a plane, Mr. Pope backed out of his arrangement with Mr. Tomlinson to purchase one-half interest in the plane. Despite losing his partner, Mr. Tomlinson decided to go forward with his plans to purchase a Cessa aircraft and thereafter attempt to obtain a partner who would buy one-half interest in the plane.

---

[1] In ruling on the cross motions for summary judgment, the court identified the issues to be decided in this proceeding. The decisive issue for trial was whether the debtor ever owned a one-half interest in the aircraft. If she did, then the court stated that any transfer of that interest to the defendant under the divorce decree was invalid as to the trustee because the transfer was not recorded pursuant to the relevant provisions of the Federal Aviation Act.

[2] The debtor has since remarried and her name is now Joyce Drummond.

2

In March 1995 the defendant arranged to purchase a C-172 Cessna aircraft from Larmont Aviation International in Spartanburg, South Carolina. In order to obtain financing to purchase the aircraft, the defendant applied for a loan at NationsBank. The defendant was told by a bank official that the bank wanted both the defendant and the debtor to sign the loan papers and security agreement. A letter was sent by Larmont Aviation International to both the defendant and NationsBank stating that the defendant was purchasing the aircraft for $30,000. The letter also advised that Larmont Aviation International held a signed Bill of Sale from the previous owner and that, upon completion of the sale of the aircraft to Mr. Tomlinson, Mr. Tomlinson's name and address would be added to the signed Bill of Sale.

By letter dated May 11, 1995, NationsBank notified the defendant that his aircraft loan request had been tentatively approved in the amount of $25,000. Thereafter, NationsBank mailed to the defendant and the debtor a Note and Security Agreement, an Aircraft Security Agreement, and an Aircraft Registration Application. The documents contained yellow Post-It notes indicating where the documents were to be signed, and small stamps stating "Sign Here" were stamped at the designated signatory lines. Both the defendant and the debtor signed the documents and mailed them back to NationsBank. The Aircraft Registration Application signed by both the defendant and the debtor certify that the aircraft is owned by the undersigned parties, and both signature lines on the Aircraft Registration statement designate each signing party as a co-owner.

The debtor testified that she never held any ownership interest in the Cessna aircraft. She testified that she signed the papers sent to her by the bank without reading them and that she thought she was merely signing the loan papers because the bank required her name on those

papers. The debtor testified that she never knew the aircraft was registered in her name and she never knew that the bill of sale contained her name as well as the name of the defendant. She testified that all decisions concerning the aircraft were made by the defendant, that she had nothing to do with the aircraft, and that she never intended to own any part of it. The defendant also testified that his former wife never held any ownership interest in the aircraft. He testified that he alone purchased the aircraft and that he paid for the aircraft with money he earned by working extra hours. While this extra money was placed in a joint account in the names of the defendant and the debtor and the payments to the bank were made from the joint account, both parties testified that the money paid for the aircraft came directly from the extra hours worked by the defendant. The defendant also arranged for the insurance on the aircraft, he secured a lease for hangar space for the aircraft, he paid the sales tax on the aircraft, and he had exclusive possession and control of the aircraft.

The trustee obtained certified copies of the records of conveyance maintained by the Aircraft Registration Branch of the Federal Aviation Administration. Included in those records was the Bill of Sale that showed the Cessna aircraft was sold to both David and Joyce Tomlinson. The defendant, however, produced a copy of a Bill of Sale that he testified was sent to him by Larmont Aviation International and it showed that the Cessna aircraft was sold only to him. The two Bills of Sale are on the same form, and contain identical signatures of the sellers. The Bill of Sale filed with the FAA is dated May 24, 1995, and does not reflect the sales price of the aircraft. The copy of the Bill of Sale introduced by the defendant was dated May 30, 1995, and it reflects a sales price of $30,000.

The trustee objected to the introduction of the Bill of Sale produced by the defendant, claiming that it was not an original Bill of Sale. Also, citing the parol evidence rule, the trustee objected to all evidence offered by the defendant that contradicted the Bill of Sale showing that the aircraft had been sold to both David and Joyce Tomlinson.

The defendant eventually found another person to buy a one-half interest in the aircraft. On or about September 28, 1995, the defendant sold a one-half interest in the aircraft to David Goins for $4,950, subject to the lien of NationsBank. Although the debtor was present at the time of the sale, she did not sign the Bill of Sale because she did not believe she owned any interest in the aircraft.

On October 2, 2003, the defendant and the debtor entered into a marital dissolution agreement, which provided:

> [E]ach party is hereby awarded all items of personal property, household goods, furnishings, and personal items of every type and nature presently in their respective possessions, and the other party is hereby divested of any right, title or interest therein.

On February 3, 2004, that agreement was incorporated into a final decree of divorce. Both the defendant and the debtor testified that, under their marital dissolution agreement, the defendant was to keep all of his property that he owned and presently possessed. At that time, the Cessna aircraft was in the possession of the defendant.

On April 21, 2004, the debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. The plaintiff was appointed trustee and filed the instant complaint seeking a

determination of the parties' respective interests in the aircraft, its turnover, and authorization to sell the debtor's alleged interest in the aircraft. Because the aircraft has been sold, the trustee now seeks to recover one-half of the proceeds from the sale.

Turning to the first issue, the court must determine whether the debtor ever owned a one-half interest in the aircraft. To decide that issue, the court believes Tennessee courts would use the same factors that are used by Tennessee courts to determine ownership of automobiles and other personal property. It is the law in this state "that the intention of the parties, not the certificate of title, determines the ownership of an automobile." *Smith v. Smith*, 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983). Thus, it has been held that intent governs whether the owner of a motor vehicle shown on the certificate of title transferred his interest to another. *Mercado v. Travelers Ins. Co.*, 443 S.W.2d 819, 822-23 (Tenn. Ct. App. 1969); *Stevens v. State Farm Mut. Auto. Ins. Co.*, 443 S.W.2d 512, 513-14 (Tenn. Ct. App. 1969); *Hayes v. Hartford Accident & Indem. Co.*, 417 S.W.2d 804, 807-08 (Tenn. Ct. App. 1967). The court must consider the totality of the circumstances to determine the parties' intent. As one panel of the Tennessee Court of Appeals has explained:

> Ownership is a purely legal concept. It connotes a "bundle of rights" or legally protected interests with regard to specific property. Included in this bundle of rights are (1) the right of possession, enjoyment, and use, (2) an unrestricted right of disposition, and (3) the right of testamentary disposition. Proof of ownership generally involves evidence with regard to possession and exercise of one or more of the prerogatives in this bundle of rights. Thus, ownership is a question for the trier-of-fact to determine from the evidence.
>
> To determine ownership of a vehicle, a trier-of-fact may consider and weigh evidence relating to (1) the circumstances surrounding the vehicle's purchase, (2) the registration of the vehicle, (3) all aspects of insuring the vehicle,

>   (4) all parties' financial stake in the vehicle, (5) the actual possession of the vehicle, (6) the responsibility for bearing the expense of operating, maintaining, and licensing the vehicle, and (7) the ultimate right to control the vehicle, including the right to make major decisions concerning the vehicle such as its use and restrictions on its use or the sale or other disposition of the vehicle.

*Rivkin v. Postal*, No. M1999-01947-COA-R3-CV, 2001 WL 1077952, at *11 (Tenn. Ct. App. Sept. 14, 2001) (citations omitted).

In this action, both the defendant and the debtor testified under oath that it was the intention of both spouses that the defendant be the sole owner of the aircraft from the time it was purchased and that the debtor have no ownership interest therein. The court finds the testimony of both Tomlinsons to be credible and determines that their intentions were as they stated. The circumstances surrounding the possession of the aircraft, such as the hanger rental and insurance coverage, confirm that the defendant was in control of the aircraft, while on the other hand there is no evidence that the debtor had anything to do with its control. Thus, the Tomlinsons' sworn testimony concerning their understandings and intentions with respect to ownership of the aircraft is consistent and supported by important circumstantial evidence.

As for the bill of sale and FAA registration produced by the trustee, both of which papers show the Tomlinsons to be co-owners of the aircraft, the court acknowledges that these constitute some evidence of co-ownership under Tennessee law, but the applicable FAA statute specifically provides that a certificate of registration with the FAA is "not evidence of ownership of an aircraft in a proceeding in which ownership is or may be in issue." 49 U.S.C.

§ 44103(c)(2). Furthermore, without any evidence that the debtor had anything to do with the preparation of the bill of sale in question, the court is not prepared to hold that an ownership interest can be involuntarily inflicted on a person, especially not without his or her knowledge. Thus, the court must conclude that the credible testimony of the Tomlinsons as to their intentions about ownership outweighs the evidence of the FAA registration and the bill of sale produced by the trustee.

Of course, the court's conclusion regarding the intentions of the Tomlinsons comes from an evaluation of the testimony offered by the defendant and the debtor. At trial, the trustee objected to the admissibility of the Tomlinsons' testimony insofar as it related to their intent. Relying on the parole evidence rule, the trustee objected to all evidence that contradicted the bill of sale showing the Tomlinsons as co-owners. The parole evidence rule generally provides:

> Terms with respect to which the confirmatory memoranda of the parties *agree* or which are otherwise set forth in a writing *intended by the parties* as a final expression of their *agreement* with respect to such terms as are included therein may not be contradicted by evidence of any *prior agreement* or of a contemporaneous *oral agreement* . . . .

Tenn. Code Ann. § 47-2-202 (emphasis added). The inapplicability of the rule is obvious. First, the bill of sale was drawn and executed by the sellers of the aircraft, with whom the debtor had had no contact, and there was therefore no evidence presented by the trustee showing that the bill of sale was in any sense a "confirmatory memorandum" to which the parties had agreed or that it was intended as a final expression of an agreement of any kind. He simply produced the bill of sale without explanation. Furthermore, the Tomlinsons did not seek to contradict the bill of sale

8

with evidence of any other agreement between the buyer and sellers, written or parole, prior, contemporaneous, or subsequent. Their testimony instead was to the effect that neither of them had ever seen or heard of the particular bill of sale until these proceedings.

The few cases available hold that bills of sale are not agreements for purposes of the rule. They are merely some evidence of a transfer. *Bertelson v. Arthur*, 244 P. 695, 695-96 (Wash. 1926) (holding bill of sale was merely evidence of a transfer and did not embody the terms of the contract in such a way as to exclude parole evidence); *Kass v. Horowitz*, 184 N.Y.S. 511 (N.Y. App. Term 1920) ("A bill of sale is not a contract. It expresses no mutual promises and is executed by the seller alone."). Were this not the law, absurd situations could result: a person could, without his knowledge or consent, be shown on a bill of sale as the buyer of a ton of controlled substances, and he would be powerless to deny that he was the owner. Hence, the court believes that it was correct in admitting the testimony by the Tomlinsons concerning their intentions about ownership of the aircraft.

Accordingly, for the foregoing reasons, the court finds that the debtor never had an ownership interest in the aircraft in question and therefore that it was never a part of her bankruptcy estate. A judgment will therefore enter in favor of the defendant.

###